IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DAVID MICHAEL GONZALES,**

   **Plaintiff,**

**v.**                                                                                                       **No. 16-cv-0045 SMV**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 20] ("Motion"), filed on September 9, 2016. The Commissioner responded on December 2, 2016. [Doc. 24]. Plaintiff replied on January 16, 2017. [Doc. 28]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 9]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that there is not substantial evidence to support the administrative law judge's ("ALJ") findings at step five. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* either (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

## Procedural Background

Plaintiff applied for supplemental security income on June 14, 2010. Tr. 101. He alleged a disability-onset date of September 27, 2009. *Id.* His claims were denied initially, on reconsideration, and by an ALJ. *Id.*; Tr. 107. Plaintiff requested review by the Appeals Council. Tr. 113–15. On July 25, 2013, the Appeals Council remanded his case to the ALJ for further proceedings. *Id.* ALJ Ann Farris held a second hearing on February 19, 2014, in Albuquerque, New Mexico. Tr. 35, 52–77. Plaintiff appeared in person with his attorney. Tr. 52. The ALJ heard testimony from Plaintiff and from an impartial vocational expert ("VE"), Thomas A. Grenier. Tr. 35, 55–94.

The ALJ issued her unfavorable decision on May 29, 2014. Tr. 45. At step one, she found that Plaintiff had not engaged in substantial gainful activity since the date of application. Tr. 38. Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There, she found that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the lumbar spine, type II diabetes mellitus, status post open reduction and internal fixation of his right wrist, obesity, and mild hearing loss in his left ear[.]" *Id.* She further found that Plaintiff had no medically determinable mental impairment. *Id.* At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 38–39.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 39–44. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §] 416.967(b) except that he can perform no more than occasional handling with his right (dominant) hand; lift no more than 15 pounds; never kneel, couch, or crawl; should avoid exposure to more than moderate noise levels; and should avoid exposure to uneven terrain.

Tr. 39.

At step four, the ALJ found that Plaintiff was unable to return to his past relevant work. Tr. 44. At step five, the ALJ found that, based on Plaintiff's RFC, age, education, and work experience and the testimony of the VE, Plaintiff could perform work that exists in significant numbers in the national economy. Tr. 44–45. Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and she denied the claim. Tr. 45.

After the ALJ denied the claim, Plaintiff requested review by the Appeals Council again. *See* Tr. 1–4. He submitted additional evidence to the Appeals Council that had not been before the ALJ. Tr. 2. All of that evidence post-dated the ALJ's decision. *See id.* The Appeals Council found that the "new information [was] about a later time[, and therefore did] not affect the [ALJ's decision]." Tr. 2. Remaining unpersuaded, the Appeals Council denied Plaintiff's request for review on November 19, 2015. Tr. 1−4. Plaintiff timely filed the instant action on January 21, 2016. [Doc. 1].

## Analysis

Plaintiff fails to show that the Appeals Council erred in declining to consider the reports of Dr. Williams and Ms. Grana. However, on review of the ALJ's decision based on the

5

evidence that was before her, the Court finds that substantial evidence does not support her findings at step five. Therefore, remand is warranted. The Court declines to address the other errors alleged by Plaintiff at this time.

## I. Plaintiff fails to meet his burden to show that the records at issue are chronologically pertinent and material.

Plaintiff submitted evidence to the Appeals Council that post-dated the ALJ's May 29, 2014 decision. Tr. 2, 7–26. The evidence comprised: (1) a neurobehavioral evaluation by Betty L. Williams, Ph.D., dated July 27, 2015, (2) a Medical Assessment of Ability to do Work-Related Activities (Mental) by Patricia Grana, LSW, dated February 26, 2015, (3) an MRI dated August 25, 2014, and (4) a psychological assessment from Rio Grande Counseling and Guidance dated August 12, 2014. Tr. 7–26. The Appeals Council declined to consider the new evidence. Tr. 2 ("This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 29, 2014."). Plaintiff argues that Dr. Williams' and Ms. Grana's reports should have been considered and included in the record by the Appeals Council. [Doc. 20] at 12–17. He makes no argument about the other evidence. *See id.* Because Plaintiff does not allege any error regarding the psychological assessment or the MRI, the Court need not address them further.

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to de novo review. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). Additional evidence should be considered only if it is new, material, and chronologically pertinent. 20 C.F.R. § 416.1470(b). Evidence is new "if it is not duplicative or cumulative,"

and material "if there is a reasonable possibility that it would have changed the outcome." *Threet*, 353 F.3d at 1191 (alterations and internal quotation marks omitted). Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ, i.e., the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142.

In *Padilla v. Colvin*, the Tenth Circuit Court of Appeals gave guidance on what constituted "chronologically pertinent" evidence. 525 F. App'x 710, 712 n.1 (10th Cir. 2013). *Id.* The court did not require evidence newly submitted to the Appeals Council to pre-date the ALJ's decision in order to qualify as chronologically pertinent. *Id.* Rather, the court focused on whether the new evidence was pertinent to the issues that had been before the ALJ. *See id.* The court found, in pertinent part:

> [T]he psychological report corroborates an anxiety diagnosis reported by [the plaintiff's] treating doctor, . . . prior to the hearing, as well as [the plaintiff's] hearing testimony. Meanwhile, his intellectual functioning evaluation relates to and augments [the treating doctor's] earlier report that he could not read or write. As to the audiological report, [the plaintiff] identifies the fact that he testified about his hearing loss during the hearing before the ALJ.

*Id.*

The Tenth Circuit evaluated the "chronologically pertinent" question in a similar way in *Chambers*, 389 F.3d at 1142–44. There, the court held that medical records dated after the ALJ's decision (one day and two months, respectively) were not too temporally remote to be chronologically pertinent. *Id.* Even though temporal remoteness alone did not necessarily disqualify the records, the court found that the records were not related to the adjudication

7

period because they represented the first indication of a condition never-before presented to the ALJ. *Id.* The court similarly held that a record dated five months after the ALJ's decision was too temporally remote *where it suggested a condition that had never been presented before*. *Id.*

If the Appeals Council fails to consider qualifying new evidence, the case should be remanded so that the Appeals Council may reevaluate the ALJ's decision in light of the complete evidence. *Threet*, 353 F.3d at 1191. However, if the evidence submitted to the Appeals Council does not meet all three requirements, then the Appeals Council does not consider it, and it "plays no role in judicial review." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

### A. Dr. Williams' Report

Plaintiff argues that the Appeals Council erred in declining to consider Dr. Williams' report. [Doc. 20] at 13–15. Dr. Williams' report is dated July 27, 2015 and August 13, 2015, more than a year after the ALJ issued her decision on May 29, 2014. Tr. 7, 45. Plaintiff argues that Dr. Williams' report, Tr. 7–12, qualifies as "new" because "it provides insight into the interaction between [Plaintiff]'s impaired memory and cognition, hearing impairment, and wrist injury." [Doc. 20] at 14. The Commissioner does not dispute that the report qualifies as "new." *See* [Doc. 24] at 18−19.

Plaintiff next argues that Dr. Williams' report is "material" because "it would change several aspects of [the ALJ]'s decision[.]" [Doc. 20] at 14. That is, Plaintiff argues that Dr. Williams' report would undermine several aspects of the ALJ's RFC assessment because Dr. Williams opined that Plaintiff cannot read, has more severe hearing loss, and has greater

8

limitations in the ability to reach and finger. *Id.* at 14–15. Defendant makes no explicit argument regarding the materiality of the report, but she does offer several reasons why a factfinder might reject it. [Doc. 24] at 18–19.

Finally, Plaintiff argues that Dr. Williams' report is "chronologically pertinent" because "it provides a longitudinal picture of [Plaintiff's] 'significant history of head trauma' [and] supports testimony, diagnoses, and functional limitations that were dismissed in [the ALJ]'s final decision." [Doc. 20] at 15. However, Plaintiff does not point to the testimony, diagnoses, and functional limitations to which he refers. *See id.*

Plaintiff fails to meet his burden (as the movant) before this Court to show that Dr. Williams' report is chronologically pertinent. *See* § 416.1470(b). As Defendant points out, Dr. Williams did not meet with Plaintiff until a year after the ALJ had issued her decision. Of course, *Padilla* and *Chambers* make clear that the date of the report does not necessarily control. The question is not solely when the report was completed; the question is whether the report relates to the time period at issue before the ALJ. Here, considering how temporally remote the report is from the adjudication period (more than a year), Plaintiff must establish in some other way (besides the date) that the report relates to the adjudication period. On de novo review, the Court finds that he fails to do so.

Plaintiff attempts to show that the report is chronologically pertinent by arguing that "it provides a longitudinal picture of [Plaintiff's] 'significant history of head trauma' [and] supports testimony, diagnoses, and functional limitations that were dismissed in [the ALJ]'s final decision." [Doc. 20] at 15. The Court is not persuaded. Plaintiff does not point to the

testimony, diagnoses, and functional limitations that he believes connect Dr. Williams' report to the adjudication period. The connection is not obvious. The Court cannot discern it. In fact, it appears to the Court that Dr. Williams' report represents the first indication of a traumatic brain injury, a condition that was simply not before the ALJ. Dr. Williams also diagnosed learning disorders, which could relate to Plaintiff's testimony about having been in special education classes. But that is the extent of the connection. Under these circumstances, on de novo review, the Court finds that Plaintiff fails to show that Dr. Williams' report is chronologically pertinent under 20 C.F.R. § 416.1470(b) and, thus, fails to show that the report should have been considered by the Appeals Council.

### B. Ms. Grana's Report

Plaintiff argues that the Appeals Council erred in declining to consider Ms. Grana's report. [Doc. 20] at 16–17. The report is dated February 26, 2015, nearly nine months after the ALJ issued her decision. Tr. 15, 16, 17, 45. Nevertheless, Plaintiff argues that the Appeals Council should have considered the report because it was new, material, and chronologically pertinent. [Doc. 20] at 16–17.

Plaintiff argues that Ms. Grana's report, Tr. 14–17, qualifies as "new" because it was "provided by a medical source not previously considered and expressed [Plaintiff]'s limitations stemming from his *mental* impairments[,]" and, thus, is not cumulative. *Id.* at 16 (emphasis in original). The Commissioner does not dispute that the report qualifies as "new." *See* [Doc. 24] at 20−21.

Next, Plaintiff argues that Ms. Grana's assessment of Plaintiff's mental functioning is "material" because "it is more restrictive than that of his treating physician[.] Had the opinion of [Ms.] Grana been properly credited, it would have necessitated a more restrictive RFC." [Doc. 20] at 16.

"[An] RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment[.]" SSR 96-8p, 1996 SSR LEXIS 5, *1, 1996 WL 374184, at *1. In other words, before any functional limitation can be included in an RFC assessment, there must first be established a medically determinable impairment, which could cause such limitation. *Id.*; 20 C.F.R. § 416.929(a)–(b).

The functional limitations assessed by Ms. Grana are explicitly mental limitations. In order for these limitations to be eligible for inclusion in an RFC assessment, there would have to be a medically determinable impairment established that could cause such mental limitations. *See id.* Plaintiff fails to show that there are any. The ALJ found that Plaintiff has "no medically determinable mental impairment." Tr. 38. Plaintiff does not point to any diagnosed mental impairment in the record,[3] nor does the Court find any. Critically, Ms. Grana cannot establish

---

[3] Plaintiff argues that Ms. Grana's report "supports testimony and diagnoses that were dismissed in [the ALJ]'s final decision." [Doc. 20] at 16. (citing Tr. 38). Apparently, Plaintiff refers to this portion of the ALJ's decision:

> [Plaintiff] has no medically determinable mental impairment. The medical evidence of record does not document any diagnosis of any mental impairment. [Plaintiff] sees his primary care provider [Dr. Roblero] on a regular basis, and she has not diagnosed any mental impairment, prescribed any psychotropic medication, or referred [Plaintiff] to a specialized mental health provider . . . .

Tr. 38 (citing Tr. 448–54, 457–500). Plaintiff cites to no other portion of the record evidencing "testimony and diagnoses" rejected by the ALJ. Accordingly, the Court is not persuaded that Ms. Grana's report supports any testimony or diagnoses that were before the ALJ.

11

any medically determinable impairment. She is a Licensed Independent Social Worker and, therefore, is not an "acceptable medical source." SSR 06-03p, 2006 SSR LEXIS 5, at *4, 2006 WL 2329939. She is an "other source." *Id.* Her opinion can "show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* However, as a non-acceptable medical source, she "cannot establish the existence of a medically determinable impairment" in the first instance. SSR 06-03p, 2006 SSR LEXIS 5, at *5, 2006 WL 2329939. Therefore, without any established medically determinable impairment, which could be the source of Ms. Grana's assessed limitations, they are simply not eligible for inclusion in the RFC assessment. Thus, there is not a reasonable possibility that Ms. Grana's report would have changed the outcome. Her report is not material.

Finally, Plaintiff argues that Ms. Grana's report is "chronologically pertinent" because "it expressly relates to the period before [the ALJ]'s decision." [Doc. 20] at 16. The report purports to be retrospective. *See* Tr. 14. It is recorded on a form that expressly asks the evaluator to provide opinions in light of Plaintiff's "medical history and the chronicity of findings <u>from 2009 to current examination</u>." *Id.* (emphasis in original). Defendant acknowledges that the form requests the evaluator to address Plaintiff's functioning from 2009. [Doc. 24] at 20. However, she seems to argue that the report did not actually reflect functioning starting in 2009. *Id.* To illustrate, Defendant points out that Plaintiff had not started counseling with Ms. Grana until months after the ALJ had issued her decision. *Id.* Ms. Grana's report did not indicate that she had reviewed any records from the relevant time period. Nor did the report give any basis for offering an opinion retrospectively. *Id.* Under these circumstances, the Court

12

is not persuaded that the report is chronologically pertinent. On de novo review, the Court finds that Plaintiff fails to show that Ms. Grana's report should have been considered by the Appeals Council.

II. <u>The ALJ's step-five findings are not supported by substantial evidence.</u>[4]

At step five the ALJ found that, based on Plaintiff's RFC, age, education, and work experience and the testimony of the VE, Plaintiff could perform other work. Tr. 44–45. Specifically, she found that Plaintiff could perform the functions of counter clerk (Dictionary of Occupational Titles ("DOT") number 249.366-010); "presser, hand" (DOT number 363.684-018); and "blending tank tender, helper" (DOT number 520.687-066). As was required to ultimately find Plaintiff not disabled, the ALJ found that these other jobs existed in "significant numbers in the national economy." *Id.* Tr. 44–45.

Plaintiff challenges these step-five findings on two grounds. First, he argues that he cannot perform either the hand presser or blending tank tender helper jobs. He argues that each is precluded by the RFC assessment made by the ALJ. Second, he argues that there is not substantial evidence to support the ALJ's finding that the one remaining job—counter clerk—exists in significant numbers in the national economy.

---

[4] Because Plaintiff has failed to show that the Appeals Council erred in declining to consider Dr. Williams' or Ms. Grana's reports, the reports play no role in this Court's review of the ALJ's decision. *See Krauser*, 638 F.3d at 1328. The Court reviews the ALJ's decision along with the evidence of record that was before the ALJ. *See id.* As explained *infra.*, the ALJ's step-five findings are not supported by substantial evidence. Remand is warranted. At this time, the Court declines to address Plaintiff's other challenges to the ALJ's decision.

A.  Substantial evidence does not support
the ALJ's finding that Plaintiff can perform the duties of hand presser.

The parties agree that the RFC assessment formulated by the ALJ would not allow Plaintiff to perform the demands of hand presser (DOT number 636.684-018). [Doc. 20] at 22−23; [Doc. 24] at 21. In fact, the VE himself acknowledged as much. Accordingly, there is no evidence to support the ALJ's finding that Plaintiff could perform the duties of hand presser.

B.  Substantial evidence does not support the ALJ's finding
that Plaintiff can perform the duties blending tank tender helper.

Reasonable explanations are required for conflicts between the VE's testimony and the DOT. *Hackett*, 395 F.3d 1168, 1175 (10th Cir. 2005) (citing Social Security Ruling ("SSR") 00-4p; *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)). "[A]n ALJ has a duty to fully develop the record[.] Questioning a [VE] about the source of his opinion and any deviations from [the DOT] falls within this duty." *Haddock*, 196 F.3d at 1091 (clarifying that the duty applies at steps three, four, and five of the sequential evaluation process). If the ALJ fails in this duty and there is an unresolved conflict between the VE's testimony and the DOT, the VE's testimony cannot constitute substantial evidence to support a determination of non-disability. *Id.*

Plaintiff argues that the ALJ's RFC assessment would not allow him to perform the blending tank tender helper job. [Doc. 20] at 23. That is, in the language of *Hackett*, Plaintiff asserts that there is an unresolved conflict between the VE's testimony (that Plaintiff can perform the duties of blending tank tender helper) and the DOT (which describes the duties of

14

such job). The ALJ's RFC assessment limited Plaintiff to no more than moderate levels of noise. Tr. 39. However, the blending tank tender helper job would expose him to more than moderate levels of noise. [Doc. 20] at 23; [Doc. 20-2] at 2 (citing DOT). Defendant appears to concede the point. [Doc. 24] at 22. However, she argues that the Court should overlook this discrepancy because "taking instructions is not a significant part of this job and . . . talking and hearing are not required." *Id.*

The problem is that the ALJ herself did not offer this explanation to resolve the conflict. Instead, the ALJ explicitly found that there was no conflict. Tr. 45. "Pursuant to SSR 00-04p, [the ALJ] determined that the vocational expert's testimony [wa]s consistent with the information contained in the Dictionary of Occupational Titles." *Id.* This finding is in error. The VE's testimony (that Plaintiff can perform the duties of blending tank tender helper) conflicts with the DOT (which lists that job as exposing the worker to more than moderate levels of noise). The Court cannot resolve the conflict in the first instance. With no resolution, the VE's testimony cannot constitute substantial evidence for the ALJ's finding that Plaintiff can perform the duties of blending tank tender helper. *See Haddock*, 196 F.3d at 1091

### C. Substantial evidence does not support the ALJ's findings that the job of counter clerk exists in significant numbers in the national economy.

Besides hand presser and blending tank tender helper, the only other job identified by the ALJ at step five was "counter clerk, [DOT number] 249.366[-]010."[5] Tr. 45. At the

---

[5] Defendant argues that a mere "scrivener's error" caused the ALJ to omit the job of bakery worker from her findings and to include the job of hand presser in its place. [Doc. 24] at 21–22 (citing *Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009)). Defendant urges the Court to review the decision as though the ALJ had found that Plaintiff could perform the duties of bakery helper. *See id.* The Court declines. Black's Law Dictionary

15

hearing, the VE initially testified that there were 400,000 counter clerk jobs in the national economy. *See* Tr. 73. However, on cross examination, the VE, Mr. Griner, admitted the number was unreliable:

> Q: Okay and with regards to these jobs, Mr. Griner, the counter clerk, the bakery worker, and the blending tank tender helper, those jobs don't correspond to that specific title that for example, the 400,000 to the blending tank—tank tender helper??
>
> A: My favorite job. There again, it, it does not and there is no system of numbering that does correlate exactly to the—each DOT.
>
> Q: **So you can't reliably say how many** bakery worker jobs there are nationally, or **counter clerk jobs there are nationally?**
>
> A: **No.**
>
> ATTY: Okay, All right, Judge that's all the questions I have.

Tr. 76 (emphases added). There was no further questioning on this subject. The ALJ did not address this cross examination testimony in any way in her decision. Without explanation, she simply found that there were 400,000 counter clerk jobs in the national economy. Tr. 45.

Plaintiff argues that, considering the VE's testimony on cross examination, there is not substantial evidence to support the ALJ's finding that there were 400,000 counter clerk jobs in the national economy or, more to the point, that the job exists in significant numbers in the national economy. [Doc. 20] at 24–26. Defendant argues that it is well-established that an ALJ

---

likens "scrivener's error" to "clerical error," defining them both as "[a]n error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." (8th ed. 2004). In *Poppa*, the Tenth Circuit mentioned in a footnote that an ALJ had incorrectly stated that certain surgeries had occurred in 2004, when they actually had occurred in 2005. The court found that this was a scrivener's error and "did not affect the outcome of the case." 569 F.3d at 1172 n.5. The Court is not persuaded that the omission of bakery worker from the ALJ's step-five findings is a scrivener's error. Rather, it is a judicial determination critical to the outcome of this case.

may rely on a VE's testimony in finding that a job exists in significant numbers. [Doc. 24] at 23. Further, Defendant argues that Plaintiff has given no reason to doubt that there are significant numbers of counter clerk jobs in the national economy, and besides, "common sense tells us" so.[6] *Id.*

To find a claimant not disabled at step five, the ALJ must find that the claimant, not only can perform work, but also that such work "exists in *significant numbers* either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B) (emphasis added). A finding of numerical significance "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (internal quotation marks and brackets omitted). In determining whether work exists in "significant numbers," an ALJ can consider many criteria, including but not limited to: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to

---

[6] Plaintiff points out that the DOT number cited by both the VE and the ALJ for courter clerk, 249.366-010, corresponds to "counter clerk (photofinishing)." [Doc. 20] at 25. This job is described as follows:

> Receives film for processing, loads film into equipment that automatically processes film for subsequent photo printing, and collects payment from customers of photofinishing establishment: Answers customer's questions regarding prices and services. Receives film to be processed from customer and enters identification data and printing instructions on service log and customer order envelope. Loads film into equipment that automatically processes film, and routes processed film for subsequent photo printing. Files processed film and photographic prints according to customer's name. Locates processed film and prints for customer. Totals charges, using cash register, collects payment, and returns prints and processed film to customer. Sells photo supplies, such as film, batteries, and flashcubes.

DOT number 249.366-010. Considering this description, the Court is not at all persuaded that "common sense tells us" that there are 400,000 such jobs in the national economy.

engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id.*, at 1330.

Defendant is correct that ALJs may rely on the testimony of a VE in making a finding of numerical significance. However, the VE in this case himself admitted that his testimony on the subject was unreliable. Nevertheless, the ALJ simply concluded that there were 400,000 counter clerk jobs. This finding is not supported by substantial evidence.

## Conclusion

Plaintiff fails to show that the Appeals Council erred in declining to consider the reports of Dr. Williams and Ms. Grana. However, the case will be remanded because substantial evidence does not support the ALJ's step-five findings. The Court declines to address Plaintiff's other alleged errors at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 20] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**