# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DAVID MICHAEL GONZALES,**

    **Plaintiff,**

**v.**                                                                                                                        No. 16-cv-0045 SMV

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion for Attorney Fees Pursuant to the Equal Access to Justice Act, with Memorandum in Support [Doc. 33] ("Motion"), filed on November 15, 2017. The Commissioner responded on November 17, 2017. [Doc. 34]. Plaintiff replied on November 30, 2017. [Doc. 35]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 9]. Plaintiff moves the Court for an award of $5,052.30 in attorney fees. [Doc. 33] at 1. Having reviewed the record, the briefing, and the relevant law, the Court finds that the Motion is well-taken and should be granted. Plaintiff will be awarded **$5,052.30** in attorney fees.

## Background

Plaintiff's claim for supplemental security income was denied by Defendant, and he timely filed suit in this Court. At step five the Administrative Law Judge ("ALJ") found that,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

based on Plaintiff's residual functional capacity ("RFC"), age, education, and work experience and the testimony of the vocational expert ("VE"), Plaintiff could perform other work. Tr. 44−45. Specifically, she found that Plaintiff could perform the functions of "presser, hand" (Dictionary of Occupational Titles ("DOT") number 363.684-018); "blending tank tender, helper" (DOT number 520.687-066); and counter clerk (photofinishing) (DOT number 249.366-010). As was required to ultimately find Plaintiff not disabled, the ALJ found that these other jobs existed in "significant numbers in the national economy." *Id.* Tr. 44–45.

In granting Plaintiff's motion and remanding the case, the Court determined that these step-five findings were not supported by substantial evidence. [Doc. 31] at 13–18. As to the first job, hand presser, the parties agreed its requirements exceeded Plaintiff's RFC assessment. *Id.* at 14. As to the second job, blending tank tender helper, the Court found that its requirements exceeded Plaintiff's RFC. As to the third and final job, counter clerk (photofinishing), the Court found that there was not substantial evidence to support the ALJ's finding it existed in significant numbers in the national economy. Lastly, the Court declined Defendant's invitation to supply another job, bakery helper, because it simply had not been identified by the ALJ. *Id.* at 15−16 at n.5.

Plaintiff now requests an award of attorney fees in the amount of $5,052.30 under the Equal Access to Justice Act ("EAJA"). [Doc. 33] at 1. The Commissioner opposes any award because, she argues, her position was substantially justified. [Doc. 34]. She makes no argument about the first two jobs, hand presser and blending tank tender helper. Instead, she

focuses solely on the third job, counter clerk (photofinishing) and the job that does not appear anywhere in the ALJ's decision, bakery helper.

### Standard

EAJA provides for an award of attorney fees to a plaintiff when: (1) he is a prevailing party, (2) the position of the United States was not substantially justified, and (3) no special circumstances would make the award unjust. 28 U.S.C. § 2412(d)(1)(A); *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007). Here, the parties do not dispute that Plaintiff is a prevailing party or that no special circumstances would make the award unjust. Instead, they disagree about whether the Commissioner's position was substantially justified. [Docs. 33, 34, 35].

The Commissioner bears the burden of showing that her position was substantially justified. *Hackett*, 475 F.3d at 1172. Her "position" collectively refers to her positions at the administrative level and before the federal courts in a given case. 28 U.S.C. § 2412(d)(2)(D). EAJA fees generally should be awarded if the ALJ's reasons for denying benefits were unreasonable, "even if the government [subsequently] advanced a reasonable litigation position." *Hackett*, 475 F.3d at 1174 (internal quotation marks omitted).

"The test for substantial justification in this circuit is one of reasonableness in law and fact." *Id.* at 1172 (quoting *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995)). Substantial justification is "satisfied if there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks, citations, and brackets omitted). A district court's remand order does

not mean, *ipso facto*, that the Commissioner's position was *not* substantially justified; that is, her "position can be justified even though it is not correct." *Hackett*, 475 F.3d at 1172 (quoting *Pierce*, 487 U.S. at 566).

Similarly, a district court's order affirming a final decision by the Commissioner does not itself mean that the Commissioner's position *was* substantially justified. *Gatson v. Bowen*, 854 F.2d 379, 381 n.1 (10th Cir. 1988). For example, when the agency applies the wrong legal standard, the Commissioner "[cannot] show that h[er] position was substantially justified, either in making the initial legal error or in arguing in the ensuing litigation that there was no error." *Chester v. Apfel*, 1 F. App'x 792, 795 (10th Cir. 2001); *see Gatson*, 854 F.2d at 380–81, 381 n.1 (holding that the Commissioner's position could not be substantially justified where the agency applied an outdated legal standard—despite the district court's initial affirmance).

### Defendant's arguments regarding the counter clerk (photofinishing) job were not substantially justified.

At the hearing, the VE initially testified that there were 400,000 counter clerk jobs in the national economy. *See* Tr. 73. However, on cross examination, the VE, Mr. Griner, admitted the number was unreliable:

> Q: Okay and with regards to these jobs, Mr. Griner, the counter clerk, the bakery worker, and the blending tank tender helper, those jobs don't correspond to that specific title that for example, the 400,000 to the blending tank—tank tender helper??
>
> A: My favorite job. There again, it, it does not and there is no system of numbering that does correlate exactly to the—each DOT.

4

> Q: **So you can't reliably say how many** bakery worker jobs there are nationally, or **counter clerk jobs there are nationally?**
>
> A: **No.**
>
> ATTY: Okay, All right, Judge that's all the questions I have.

Tr. 76 (emphases added). There was no further questioning on this subject.

In the merits briefing, Plaintiff argued that the VE's testimony did not constitute substantial evidence to support the ALJ's finding of 400,000 counter clerk jobs in the national economy. [Doc. 20] at 24–26. Plaintiff's argument was based on the VE's admission that the number was unreliable. *Id.*

Defendant responded that an ALJ's entitlement to rely on VE testimony was well-established. [Doc. 24] at 23. Further, Defendant argued that the ALJ was not required "to determine an exact number of jobs with scientific precision[.]" *Id.* She argued for affirmance because Plaintiff had given no reason to doubt that there were "significant numbers" of counter clerk jobs in the national economy. *Id.* She argued that this was just "common sense[.]" *Id.*

The Court agreed with Plaintiff. [Doc. 31] at 15–18. In determining whether work exists in "significant numbers," an ALJ can consider many criteria, including but not limited to: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id.* at 17–18 (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)).

Based on the VE's admission that the 400,000 number was unreliable, the lack of further questioning on the subject, and the complete lack of any discussion in the ALJ's decision to support the number, the Court found that there was not substantial evidence to support the ALJ's finding that the job of counter clerk existed in significant numbers in the national economy. [Doc. 31] at 16–18. Further, the Court disagreed that substantial evidence to support the ALJ's finding could be inferred based upon common sense. [Doc. 31] at 17 n.6.

Defendant now argues that her position was substantially justified. She argues that her position was reasonable because the VE testified that there were 400,000 counter clerk jobs in the national economy. [Doc. 34] at 4. However, she completely ignores the fact that the VE himself admitted that the number was unreliable. *See id.* Beyond the VE's admittedly unreliable testimony, Defendant points to no other evidence that could support the ALJ's determination that the job of counter clerk (photofinishing) exists in significant numbers in the national economy. *Id.* That is because there is no such evidence. The ALJ relied solely upon the VE's testimony, and the VE conceded that his testimony was unreliable.

In an apparent attempt to rehabilitate the VE's testimony (and the ALJ's reliance upon it), Defendant argues that VEs are not required to "produce detailed job statistics specific to *DOT*-coded occupations." *Id.* at 4–5. She bases this argument on a case from the Fourth Circuit, *Guiton v. Colvin*, 546 F. App'x 137, 142-43 (4th Cir. 2013). In *Guiton*, the Fourth Circuit Court of Appeals held that an ALJ could rely on a VE's testimony regarding the number of jobs that existed in the national economy where that testimony was based on the

Occupational Employment Quarterly ("OEQ"),[2] even though the OEQ did not precisely correspond to the DOT. 546 F. App'x at 142–43. But there is no suggestion in the record that the VE in this case was relying on the OEQ for his job numbers. *See* Tr. 71–76 (transcript of VE's testimony). The VE never explained how he arrived at his figures, and no one asked him to do so. *See id.* The issue is not whether the OEQ is as reliable as the DOT. The issue is whether the ALJ may base a finding on unreliable testimony. The ALJ relied exclusively on the VE's testimony for her finding on the number of jobs. Tr. 45. The VE admitted that his testimony on the number of jobs was unreliable. Defendant fails to show that she was substantially justified in defending this aspect of the ALJ's decision.[3]

## Defendant was not substantially justified in her arguments regarding the bakery worker job.

In the Commissioner's final decision, the ALJ found that Plaintiff could perform other work at step five. Tr. 45. In so doing, she identified three jobs—and only three. Nevertheless, Defendant argued in her merits briefing that the Court should consider a fourth: bakery worker.

---

[2] The OEQ is "a commercial publication that employs government data to provide statistics regarding the number of available jobs by census-coded occupational category." *Guiton*, 546 F. App'x at 140.

[3] Defendant also cites to *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), but she does not discuss the case or explain in any way how it supports her position. In *Hall*, the Sixth Circuit Court of Appeals clarified that the number of jobs constituting "significant numbers" is not determined solely by its percentage of the total number of jobs in a geographic area. Rather:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

837 F.2d at 275. *Hall* does not change this Court's analysis.

Defendant argued it was omitted from the ALJ's decision based on a "scrivener's error." [Doc. 24] at 21–22 (citing *Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009)).

The Court was not persuaded. [Doc. 31] at 15–16 n.5. The Court looked to Black's Law Dictionary, which likened "scrivener's error" to "clerical error," defining them both as "[a]n error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." (8th ed. 2004). In *Poppa*, the Tenth Circuit mentioned in a footnote that an ALJ had incorrectly stated that certain surgeries occurred in 2004, when they actually had occurred in 2005. The court found that this was a scrivener's error and "did not affect the outcome of the case." 569 F.3d at 1172 n.5. Based on these authorities, this Court was not persuaded that the absence of bakery worker from the ALJ's step-five findings was a scrivener's error. [Doc. 31] at 15–16 n.5. Rather, it was a judicial determination critical to the outcome of the case. *Id.*

In defending her position, Defendant argues that the VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could perform the duties of bakery worker. [Doc. 34] at 5 (citing Tr. 73). Defendant argues that the "Tenth Circuit has found, in similar circumstances, that an ALJ's articulation deficiency did not warrant remand." *Id.* (citing *Berna v. Chater*, 101 F.3d 631, 634 (10th Cir. 1996); *Wilkerson v. Chater*, 106 F.3d 414, 1997 WL 26563, at *4 (10th Cir. Jan. 24, 1997) (Table)). These cases do not support Defendant's position. These cases were affirmed based on waiver. *Berna*, 101 F.3d at 633–34; *Wilkerson*, 106 F.3d 414, 1997 WL 26563, at *4. In each case, the plaintiff failed to raise a certain

argument, and therefore, the court held that the argument was waived.[4] These cases do not stand for the proposition that a court may supply a step-five finding post hoc to save an ALJ's decision. In fact, to do so "would require [this Court] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). The Commissioner's position—in asking the Court to supply the job of bakery worker post hoc, in order to save the ALJ's decision—was not substantially justified.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Attorney Fees Pursuant to the Equal Access to Justice Act [Doc. 33] is **GRANTED**, and Plaintiff David Michael Gonzales is authorized to receive **$5,052.30** for payment to his attorney for services before this Court as permitted by the Equal Access to Justice Act, 28 U.S.C. § 2412, and in accordance with *Manning v. Astrue*, 510 F.3d 1246, 1255 (10th Cir. 2007).

**IT IS FURTHER ORDERED** that if Plaintiff's counsel is ultimately granted attorney fees pursuant to 42 U.S.C. § 406(b) of the Social Security Act, counsel shall refund the smaller

---

[4] The Court acknowledges that in each case, the issue waived was a challenge to step-five findings supplied by a district court. Nevertheless, the cases turned—not on whether a court may supply missing findings—but rather on the plaintiff's *waiver* of any challenge to the court's supplying the missing finding. *Berna*, 101 F.3d at 633–34; *Wilkerson*, 106 F.3d 414, 1997 WL 26563, at *4.

What is more, in *Berna*, the court acknowledged that, in fact, the ALJ's decision itself contained sufficient findings to support the step-five determination supplied by the district court. 101 F.3d at 634 ("[A]lthough the administrative determination stopped short of step five, subsidiary findings necessary for an alternative disposition at that stage were included in the body of the ALJ's decision, which recited the [VE]'s opinion—given in response to a hypothetical inquiry the substance of which has not been questioned—'that there were a substantial numbers of other jobs in the regional and national economy which the claimant could perform.'") (brackets omitted). Of course, the case at bar is different. The ALJ's decision here does not include any reference to the VE's testimony about the job of bakery worker. Tr. 44–45. Nor is there anything contained in the ALJ's decision itself that could be interpreted as findings regarding the job of bakery worker. *Id.*

award to Plaintiff pursuant to *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) ("Congress harmonized fees payable by the Government under EAJA with fees payable under § 406(b) out of the claimant's past-due Social Security benefits in this manner: Fee awards may be made under both prescriptions, but the claimant's attorney must refun[d] to the claimant the amount of the smaller fee.") (internal quotation marks omitted).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**